UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NAHIDH G. SHAO,

        Petitioner,        CASE NO. 17-10958
                                      HON. DENISE PAGE HOOD
v.

DIRECTOR OF BUREAU OF
IMMIGRATION AND CUSTOMS
ENFORCEMENT,

        Respondent.
                                              /

## **ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS [#1]**

**I.    BACKGROUND**

On March 27, 2017, Petitioner Nahidh G. Shao ("Shao") filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241. (Doc # 1) On March 31, 2017, the Court issued an Order Directing Service and Response and staying the removal of Shao. (Doc # 3) On April 6, 2017, the Government filed an Emergency Motion to Vacate Stay of Removal for Good Cause Shown. (Doc # 5) On April 7, 2017, Shao filed a Response. (Doc # 6) On April 7, 2017, the Court entered an Order Granting the Government's Emergency Motion to Vacate Stay of Removal. (Doc # 7) The Court vacated the stay of removal and reset the hearing on Shao's Petition. On May 1, 2017, the Government filed a Response in Opposition to Shao's Petition. (Doc # 9) The Court held the hearing on May 4, 2017.

1

Shao is a native of Iraq who last entered the United States as a child and lawful permanent resident in February 1967. (Doc # 5-2, Pg ID 44) In 1983, Shao was convicted in Oakland County of assault with intent to commit murder, two counts of armed robbery, and three counts of felony firearm. *Id.*; Doc # 1-1. He was sentenced to a minimum of 40 years in prison. (Doc # 5-2, Pg ID 44; Doc # 1, Pg ID 8-9) In November 1994, Shao was ordered removed to Iraq, and in July 1995, the Board of Immigration Appeals ("BIA") dismissed Shao's appeal. (Doc # 5-2, Pg ID 44) On September 13, 2016, Shao was paroled from the Michigan Department of Corrections into the custody of the U.S. Immigration and Customs Enforcement ("ICE") pursuant to an immigration detainer. *Id.*

Shao has since been in ICE custody for approximately seven and a half months pending his removal to Iraq. According to a declaration of Bryan Norburn, ICE Deportation Officer, ICE has been working diligently to remove Shao. *Id.* ICE submitted a travel document request to the Iraqi Consulate in October 2016, and Consulate officials interviewed Shao in November 2016. On December 12, 2016, ICE issued a Decision to Continue Detention in Shao's case following a 90-day post-order custody review. The letter informed Shao that ICE was working on obtaining a travel document for his removal, and that he was considered a public safety threat due to his criminal history. *Id.* at 44-45. ICE subsequently received a letter from the Iraqi Consulate denying the request for a travel document for Shao

due to the absence of Shao's original Iraqi documents and his stated unwillingness to return to Iraq. *Id.* at 45.

Shao's case was then transferred to ICE Headquarters' Office of Enforcement and Removal Operations ("HQ ERO") where Removal and Internal Operations ("HQ RIO") took over efforts to remove Shao. *Id.* On January 27, 2017, HQ RIO issued a Decision to Continue Detention in Shao's case. The letter informed Shao that ICE was working on obtaining a travel document for his removal, and that one was expected. *Id.*

According to a declaration of Julius Clinton ("Clinton"), ICE Deportation Officer in HQ RIO,

> [HQ] ERO has been in negotiations with the government of Iraq over the past year regarding the repatriation of Iraqi nationals subject to a final order of removal. As a result of these recent negotiations, via the United States Embassy in Baghdad, Iraq, ERO has received approval from the Iraqi government to return a number of Iraqi nationals ordered removed from the United States.
>
> On February 6, 2017, ERO received approval to move forward with scheduling the removals. HQ ERO has approved a list of Iraq[i] nationals that will be repatriated. Iraq has agreed to accept these subjects without a travel document.

(Doc # 5-3, Pg ID 48) The declaration indicates that the first removals were scheduled for April 2017, and Shao was among the individuals approved for removal in April 2017. *Id.*

3

On April 12, 2017, Shao filed a motion with the BIA to reopen his removal proceedings. (Doc # 9-5) On April 17, 2017, the BIA granted Shao's emergency request for a stay of removal pending the BIA's consideration of his motion. (Doc # 9-6)

An ICE charter removal flight to Iraq departed as scheduled on April 18, 2017; however, Shao was not on the flight as planned. (Doc # 9-4, Pg ID 130) According to a Supplemental Declaration of Clinton, Shao was removed from the manifest of the charter flight due entirely to the stay of removal granted by the BIA the day before. *Id.* All of the Iraqi nationals that were on the charter flight were successfully repatriated to Iraq. *Id.* According to Clinton, more charter removal flights to Iraq are being scheduled for the coming months. *Id.* at 131. He asserts that, except for the stay granted by the BIA, he knows of no barrier that would prevent ICE from removing Shao on one of these upcoming charter flights to Iraq. *Id.*

## II. ANALYSIS

Shao seeks release under supervision from ICE custody via the instant petition for writ of habeas corpus filed under 28 U.S.C. § 2241. He argues that his detention is unconstitutional because it has been indefinitely extended beyond the detention period authorized by 8 U.S.C. § 1231(a)(6) of the Immigration and Nationality Act.

Federal courts have jurisdiction to consider challenges to the lawfulness of immigration-related detention in habeas proceedings. *Zadvydas v. Davis*, 533 U.S. 678, 687-88 (2001). A district court has the power to grant a writ of habeas corpus in accordance with 28 U.S.C. § 2241, which provides in pertinent part:

> (a) Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions. . . . (c) The writ of habeas corpus shall not extend to a prisoner unless-- (1) He is in custody under or by color of the authority of the United States or is committed for trial before some court thereof . . . .

28 U.S.C. § 2241.

Congress has directed that after entry of a final order of removal, "the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')." 8 U.S.C. § 1231(a)(1)(A). "During the removal period, the Attorney General shall detain the alien." *Id.* at § 1231(a)(2). Congress has further authorized the Attorney General to detain the alien beyond the 90-day removal period under certain circumstances:

> An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

*Id.* at § 1231(a)(6).

Detention of an alien, however, may not be indefinite. *Zadvydas*, 533 U.S. at 688. If removal of the alien is not reasonably foreseeable, then continued detention of the alien is unreasonable and not authorized by the statute. *Id.* at 699-700. Detention for a period of up to six months is considered presumptively reasonable. *Id.* at 701. As the Supreme Court has explained,

> [a]fter this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Id.* at 701.

> Courts have found no significant likelihood of removal in five types of cases: (1) where the detainee is stateless and no country will accept him; (2) where the detainee's country of origin refuses to issue a travel document; (3) where there is no repatriation agreement between the detainee's native country and the United States; (4) where political conditions in the country of origin render removal virtually impossible; and (5) where a foreign country's delay in issuing travel documents is so extraordinarily long that the delay itself warrants an inference that the documents will likely never issue.

*Ahmed v. Brott*, No. CIV. 14-5000, 2015 WL 1542131, at *4 (D. Minn. Mar. 17, 2015), *report and recommendation adopted*, No. CIV. 14-5000, 2015 WL 1542155 (D. Minn. Apr. 7, 2015) (collecting cases).

In *Demore v. Kim*, the Supreme Court held that the detention without bail of removable criminal aliens pending their removal proceedings was constitutionally permissible. 538 U.S. 510, 531 (2003). In so holding, the court distinguished *Zadvydas* in two respects. *Id.* at 527. The court noted that removal was no longer practically attainable for the aliens in *Zadvydas* who were detained following final orders of removal, which is not the case with detention pending removal proceedings. *Id.* The court also noted that, while the period of detention at issue in *Zadvydas* was indefinite and potentially permanent, the detention in *Demore* was of a much shorter duration pending removal proceedings with a typical calendar (in most cases a month and a half to five months where the alien chooses to appeal). *Id.* at 528-29. The respondent in *Demore* had been in custody for six months, longer than average, "but respondent himself had requested a continuance of his removal hearing." *Id.* at 530-31.

In *Mulla v. Adducci*, the petitioner had been in custody for nearly a year following his final order of removal. 178 F. Supp. 3d 573, 577 (E.D. Mich. 2016). Pakistan had issued a travel document for him, and ICE had scheduled his removal months earlier. However, on the day of the scheduled removal, the petitioner filed a motion to reopen his removal proceedings and a motion to stay removal. *Id.* at 575. The petitioner was at the airport when ICE received word that the BIA had granted the motion to stay; he would have been removed that day if not for the

stay. *Id.* The court found that the length of the petitioner's detention did not reflect complications that ICE encountered effecting his removal. Rather, much of the delay was attributable to the petitioner's own efforts at pursuing remedies to forestall or reverse the order of removal. *Id.* at 577. The court concluded that, while the petitioner was entitled to follow that course, his efforts to employ that delay to establish that his detention was indefinite were unconvincing. *Id.* The court denied his petition for writ of habeas corpus without prejudice, noting that the petitioner was likely to receive another travel order from Pakistan within the next couple of months. *Id.*

In this case, it is undisputed that Shao has been detained under 8 U.S.C. § 1231(a)(6) since September 13, 2016 for longer that the six-month presumptively reasonable period under *Zadvydas*. Shao argues that that there is no significant likelihood that he will be removed in the reasonably foreseeable future because there is no record of him as an Iraqi national and no passport has ever been issued in his own name. (Doc # 1, Pg ID 10) The Government argues that Shao's detention has not exceeded a period reasonably necessary to secure his removal. The Government notes that the length of Shao's detention is not due to a lack of diligence on ICE's part or Iraq's unwillingness to repatriate him, and that Shao likely would have been removed to Iraq already, but for the BIA granting his motion to stay.

The Court finds that Shao has not shown that there is no significant likelihood that he will be removed in the reasonably foreseeable future. Although Shao does not have an Iraqi passport, the evidence shows that Iraq agreed to accept Shao, and other Iraqi nationals ordered removed, without travel documents in February 2017. Shao was approved for removal and was scheduled to depart on an ICE charter flight to Iraq on April 18, 2017. The evidence further shows that he likely would have been successfully repatriated to Iraq, as were other Iraqi nationals who were removed on that flight, but for the BIA granting his motion to stay the day before he was scheduled to be removed. As in *Mulla*, the most recent delay in Shao's removal is attributable to his own efforts at pursuing remedies to reverse his order of removal, and while he is entitled to follow that course, he cannot employ that delay to establish that his detention is indefinite. *See Mulla*, 178 F. Supp. 3d at 577. The evidence here indicates that more charter removal flights to Iraq are being scheduled for the coming months, and, except for the stay granted by the BIA, ICE knows of no barrier to enforcing Shao's removal order. Shao's removal is therefore not practically unattainable, indefinite, or potentially permanent. As noted in *Demore*, detention pending removal proceedings with a typical calendar is not indefinite. 538 U.S. at 528-29.

If Shao is not removed in the coming months, he may at some point be able to make a showing that there is good reason to believe that there is no significant

likelihood of removal in the reasonably foreseeable future. For now, however, the Court denies Shao's Petition for Writ of Habeas Corpus.

## III. CONCLUSION

For the reasons set forth above,

IT IS HEREBY ORDERED that Petitioner's Petition for Writ of Habeas Corpus (Doc # 1) is DENIED.

IT IS FURTHER ORDERED that this action is DISMISSED WITHOUT PREJUDICE.

S/Denise Page Hood<br>
Denise Page Hood<br>
Chief Judge, United States District Court

Dated: May 10, 2017

I hereby certify that a copy of the foregoing document was served upon counsel of record on May 10, 2017, by electronic and/or ordinary mail.

S/LaShawn R. Saulsberry<br>
Case Manager